# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ALEC PLOTTS, on behalf of himself and all others similarly situated,

        Plaintiffs,

v.

AMERICAN HONDA MOTOR CO., INC.,

        Defendant.

Case No. 24-CV-4351 (NEB/EMB)

ORDER ON AHM'S MOTION TO EXCLUDE EXPERT TESTIMONY, AHM'S MOTION FOR SUMMARY JUDGMENT, AND PLOTTS'S MOTION TO CERTIFY CLASS

---

Plaintiff Alec Plotts's 2020 Honda Pilot produced sporadic and startling noises like loud popping and crackling because of loose cables. After Plotts sued American Honda Motor Co., AHM issued a free recall repair for the Pilot. AHM's evidence indicates the recall repair was successful; Plotts disputes this assertion. Plotts alleges that AHM concealed the defect and that he overpaid for the Pilot because he would not have bought it if he had known about the defect.

Before the Court are three motions. AHM moves to exclude Plotts's expert opinion (ECF No. 156) and for summary judgment on Plotts's claims (ECF No. 157). And Plotts, as named Plaintiff, moves to certify a class of persons who purchased certain Honda vehicles with this defect. (ECF No. 144.)

The logical road proceeds as follows: The Court will first address the motion to exclude Darren Manzari because one of his opinions is critical to summary judgment. Manzari opines that AHM's recall repair was ineffective. This opinion does not meet the criteria of Rule 702 of the Federal Rules of Evidence; thus, it is inadmissible. And without that expert opinion, Plotts does not have sufficient evidence to overcome AHM's showing that the recall repair was effective. The free and effective recall repair remedies Plotts's injury of overpayment, as measured by cost-of-repair. And, because this overpayment is Plotts's only theory of injury, he has no remaining injury, so the Court lacks jurisdiction.

The Court therefore grants in part AHM's motion to exclude (ECF No. 156), grants AHM's motion for summary judgment (ECF No. 157), and denies as moot Plotts's motion for class certification. (ECF No. 144.)

## BACKGROUND

Certain AHM cars, like Plotts's 2020 Honda Pilot, include an "infotainment system" which contains multimedia components such as the "main audio unit, tuner, amplifier, navigation system, and other components (e.g., Blu-ray disc player)." (ECF No. 173 (sealed) at 10–22[1] ("Undisputed Facts"[2]); *id.* ¶ 6.) A Media Oriented Systems

---

[1] Page citations to the record reference ECF pagination.

[2] In its summary judgment briefing, AHM offers "Undisputed Facts." (*See* ECF No. 161 at 11–18.) The Court cites to these Undisputed Facts when those facts are deemed

2

Transport ("MOST") network connects these multimedia components to each other and permits high-capacity data transmission. (*Id.* ¶ 7.) The MOST network is shaped as a ring ("MOST ring"), and the various components are connected by coaxial cables. (*Id.* ¶ 8.) These coaxial cables have female and male terminals. (*Id.*)

After receiving a report about intermittent audio popping and crackling in some AHM cars, AHM diagnosed the root cause as loose connections in the MOST ring. (*Id.* ¶¶ 11–12.) The loose connections were caused by female terminals that a third party manufactured, which did not meet AHM's design specifications. (*Id.* ¶ 12.)

Starting in the summer of 2020 and continuing over the next few years, AHM introduced various countermeasures to address the issue, but the company continued to receive reports of reoccurring audio symptoms—*e.g.*, popping and crackling noises. (ECF No. 159-2 ("Kalwasinski Decl.") ¶¶ 26–39.)

A few months after Plotts bought his 2020 Honda Pilot EX-L, he noticed issues with the radio: "abrupt popping noises" and "really loud static." (ECF No. 158-1 ("Plotts Dep.") at 35–36, 70.[3]) Plotts's wife took the Pilot into the dealership twice over the next year for assistance and repairs. (*Id.* at 74–75, 81–82.) Even after these visits, however,

---

undisputed in Plotts's opposition brief. (*See* ECF No. 173 at 10–22.) The Court cites the record directly for other facts the Court determines are undisputed.

[3] Citations to deposition transcripts reference native pagination.

Plotts asserts that he and his wife continued experiencing the noises. (*Id.* at 80–100.) Plotts made no other complaints about the Pilot. (Undisputed Facts ¶ 40.)

Then, two years later, in June 2023, AHM issued a free recall repair on the 2020 Pilot and other AHM vehicles. (ECF No. 158-4 ("Recall Report"); Kalwasinski Decl. ¶ 41.) The recall repair was filed with the National Highway Traffic Safety Administration ("NHTSA").[4] (Recall Report; Kalwasinski Decl. ¶ 41.) The free recall repair applied to all cars, regardless of warranty and reimbursed customers who paid out-of-pocket for MOST ring repairs before the NHTSA-backed recall repair. (Recall Report at 4.) The recall repair is over 99% effective. (ECF No. 160 (sealed) ("Suppl. Kalwasinski Decl.") ¶ 21.) For the 2020 Pilot, only 0.57% of owners report issues with their infotainment system after receiving the recall repair, and only 0.04% complain of ongoing issues after a second repair. (*Id.*)

Over a year after AHM issued the recall repair, Plotts took his Pilot to get the repair. (Plotts Dep. at 120.) Plotts has not experienced any popping since but did "have

---

[4] The NHTSA is an agency within the Department of Transportation. *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1209 (10th Cir. 2012). Because AHM initiated its recall repair through NHTSA, the recall repair is subject to statutory mandates and continuing administrative oversight from the NHTSA. *Id.* at 1211–12. For example, the NHTSA "can issue stiff fines if [AHM] fails to carry out the recall to [NHTSA's] satisfaction." *Id.* at 1209.

static on the radio" once. (*Id.* at 122–23.) Besides this incident, he has not noticed any other

issues with static or popping. (*Id.* 124.)

## ANALYSIS

### I.     Motion to Exclude Manzari Testimony

#### A.     *Legal Standard*

The Court begins with AHM's motion to exclude Plotts's expert, Darren Manzari,

because one of his opinions is critical to summary judgment. Rule 702 of the Federal Rules

of Evidence governs the admission of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if
> the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will
>     help the trier of fact to understand the evidence or to determine a fact in
>     issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and
>     methods to the facts of the case.

Fed. R. Evid. 702.

When deciding a motion to exclude expert testimony under Rule 702, the Court

fulfills its gatekeeping role by "assur[ing] that evidence admitted in a case is both relevant

and reliable." *Sprafka v. Med. Device Bus. Servs., Inc.*, 139 F.4th 656, 660–61 (8th Cir. 2025).

To do so, the Court questions whether the proponent has demonstrated that the proffered

testimony satisfies each of the above admissibility requirements by a preponderance of the evidence. Fed. R. Evid. 702 advisory committee's note to 2023 amendment. In evaluating whether expert testimony is reliable, the Court must separate "expert opinion evidence based on good grounds from subjective speculation that masquerades as scientific knowledge." *Sprafka*, 139 F.4th at 661 (citation omitted).

## B.    *Manzari's Expert Testimony*

AHM moves to exclude Manzari's opinion that AHM's recall did not repair the infotainment system defect, arguing that he does not meet any of the Rule 702 criteria. The Court agrees that Plotts has not carried his burden that Manzari's testimony is admissible under Rule 702. He has not shown, by a preponderance of the evidence, that Manzari's testimony "is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case."[5] Fed. R. Evid. 702(b)–(d).

---

[5] The 2023 amendment to Rule 702 demands specificity of analysis on each prong. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1050 (9th Cir. 2025) (noting that the 2023 amendment "requires a proponent of expert testimony to demonstrate each of the requirements of Rule 702 by a preponderance of the evidence"). But because Plotts has not carried his burden on the criteria in Rule 702 (b) through (d), Manzari's testimony on the repair's effectiveness is inadmissible. So, the Court need not opine on the other criteria, *i.e.*, whether Manzari is qualified or whether his testimony would help jurors. *See* Fed. R. Evid. 702(a). Likewise, the Court need not resolve remaining challenges to Manzari's other opinions.

Manzari supports his ineffective repair opinion in two ways, neither of which satisfies Rule 702. *First*, Manzari claims that AHM's repair was ineffective because it did not repair or replace the defective female terminals. (ECF No. 177-7 (sealed) ("Manzari Suppl. Rep.") ¶ 65.) But in reaching this opinion, he fails to meaningfully consider that (1) AHM's recall repair included a splice box repair for existing car owners or that (2) the evidence suggests that the recall repair was over 99% effective. (Suppl. Kalwasinski Decl. ¶¶ 7–10, 21.) Because this opinion does not consider the relevant facts of the case, it is fundamentally unsupported and should be excluded. *Neb. Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) ("An expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported."). These deficiencies undermine the foundation of his opinion rendering Manzari's testimony "mere speculation." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (citation omitted); *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019) ("Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case."). Manzari's first reason supporting his opinion is insufficient under Rule 702.

*Second*, Manzari relies on six self-reports of customers who received AHM's recall repair but claimed the defect still manifested. For example, he relies on Plotts and another car owner who "both note they had the recall performed but their vehicles continue to

produce loud and unexpected static and popping noises, although not as severely as before the recall." (Manzari Suppl. Rep. ¶ 66.) He also cites four customer complaints made on NHTSA's website which alleged continued audio symptoms despite receiving AHM's recall repair. (*Id.*)

Manzari's reliance on six subjective, unverified customer complaints is not sufficient to support his opinion that the recall repair was ineffective. Manzari never inspected Plotts's Pilot nor any other AHM cars before preparing his opinion. (ECF No. 177-5 (sealed) ("Manzari Dep.") at 61–62, 191.) He never spoke with Plotts. (*Id.* at 66.) And he never spoke with any other 2020 Pilot owners. (*Id.*) Without examining the car or speaking with owners, how can Manzari reliably conclude that the source of the customer's complaint is a defect in the infotainment system?

He cannot. Even Manzari himself seems to recognize this. He testified that if a customer asked him to diagnose the symptoms of audio popping and crackling, he "wouldn't just take the customer's word," but would need to inspect the car, check the MOST ring, and confirm that the sound is coming from the radio as opposed to the engine backfiring, for example. (*Id.* at 255–56.) Manzari offers no reliable methodology for his opinion, and relying on six subjective customer complaints is an insufficient factual basis.

Plotts argues that Manzari's testimony is sufficiently supported and reliable because Manzari relied on internal AHM documents which reflected AHM's testing of

its countermeasures. (ECF No. 176 at 25 (sealed).) But in the deposition testimony that Plotts cites in his opposition brief, Manzari did not identify the specific document he testified about and said he did not know, without looking at it, if the document related to AHM's June 2023 NHTSA-approved recall repair or pre-NHTSA countermeasures. (*Id.*; Manzari Dep. at 233–34.) The other documents Plotts contends that Manzari relied on for this opinion pre-date the 2023 recall repair and thus offer no insight into its effectiveness. (ECF No. 176 at 25; ECF Nos. 153-11 (sealed), 153-12 (sealed).) They cannot serve as a sufficient basis or reliable methodology for Manzari's ineffective repair opinion.

The Court cannot find, by a preponderance of the evidence, that Manzari's ineffective recall repair testimony is based on sufficient facts or reliable methodology, and it cannot conclude that the opinion reflects a reliable application of principles and methods to the facts of the case. Manzari's say-so testimony is insufficient; the analytical gap between the facts and his opinion is too great. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Exercising its important gatekeeping function, the Court excludes Manzari's testimony that AHM's recall repair was ineffective.[6]

---

[6] The Court acknowledges that Manzari has been successfully proffered as an expert in other cases, but those cases do not involve the same thin testimony that is present here, and some predate the 2023 amendment to Rule 702. And this Court is not the first to exclude testimony from Manzari. *See Sanchez v. Kia Motors Am., Inc.*, No. 8:20-CV-01604 (JLS/KES), 2024 WL 4730654, at *10–11 (C.D. Cal. Nov. 7, 2024) (excluding bulk of

9

## II.    Motion for Summary Judgment

### A.    *Legal Standard*

#### 1.    *Summary Judgment*

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012) (citing Fed. R. Civ. P. 56(c)). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a summary judgment motion must view the facts in the light most favorable to the nonmovant and give that party the benefit of all reasonable inferences supported by the evidence. *Dallas v. Am. Gen. Life & Acc. Ins. Co.*, 709 F.3d 734, 736 (8th Cir. 2013). "The burden of demonstrating an absence of a genuine dispute of material fact" is on the movant. *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant satisfies the burden, the nonmovant "must present specific evidence, beyond mere denials or allegations that raise a genuine issue for trial." *Id.* (citation modified).

---

Manzari's testimony because he failed to connect his automotive expertise with his opinions, and one of his opinions was vague and speculative).

2.      *Article III Jurisdiction*

AHM argues that AHM's recall repair obviates any Article III injury, so the Court lacks subject-matter jurisdiction. The U.S. Constitution limits federal courts' subject-matter jurisdiction to ongoing cases and controversies. U.S. Const. art. III, § 2, cl. 1. One component of the case-or-controversy requirement is standing, which requires a plaintiff to show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Plaintiffs must have this requisite personal interest throughout the duration of the case. *McNaught v. Nolen*, 76 F.4th 764, 769 (8th Cir. 2023). If, during the course of litigation, a plaintiff can no longer satisfy the above elements, then the case becomes moot. *Id.* (remarking that if "the issues presented in a case lose their life because of the passage of time or a change in circumstances and a federal court can no longer grant effective relief" then the case is moot (citation modified)). In those scenarios, the case no longer presents an ongoing case or controversy, so the Court has no discretion; it must dismiss the case for lack of jurisdiction. *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) (en banc).

B.      ***Injury***

The Court faces the question of whether plaintiffs have an Article III injury if they experience a defect and receive an effective repair, but nonetheless still claim they

11

overpaid for the product and use cost of repair to measure the overpayment. They do not.

Plotts's inability to create a fact issue as to the success of AHM's recall repair is fatal.

Without evidence of any other injuries, Plotts does not have an injury-in-fact, so his case

must be dismissed.

1.      *Cost of Repair as Measure of Overpayment for Defective Products*

Plotts asserts that his injury is that he overpaid for his Pilot and thus did not get

the benefit of his bargain.[7] And he uses cost of repair as a proxy for overpayment—he

seeks damages because the Pilot was worth less money at the time of sale. (ECF No. 173

(sealed) at 31.)

Courts have used cost of repair as a proxy for overpayment of a defective product.

*See, e.g., Soo Line R. Co. v. Fruehauf Corp.*, 547 F.2d 1365, 1378–79 (8th Cir. 1977) (finding

no error where the trial court instructed the jury that the cost of repair is a proper

damages model for a breach of warranty claim under Minnesota law); *Indus. Graphics,*

*Inc. v. Asahi Corp.*, 485 F. Supp. 793, 802 (D. Minn. 1980) (stating that under Minnesota's

breach of warranty law, the cost of repair is a reliable measure of damages). But in many

---

[7] Plotts seeks benefit-of-the-bargain damages and argues that cost of repair is an appropriate measure of damages for all his claims. AHM argues that cost of repair is not appropriate for the fraud-based claims because Minnesota awards out-of-pocket losses, not benefit-of-the-bargain damages for fraud claims. (ECF No. 161 at 25.) The Court need not weigh in on this issue because under either theory of recovery, benefit-of-the-bargain or out-of-pocket-losses, Plotts has failed to show he has suffered an overpayment injury. So, for simplicity, the Court refers to Plotts's damages as benefit-of-the-bargain damages.

cases cited by Plotts, the attempted repairs failed during the warranty period. *Riley v. Gen. Motors LLC*, No. 2:21-CV-00924, 2024 WL 1256056, at *1–3 (S.D. Ohio Mar. 25, 2024); *Jefferson v. Gen. Motors*, LLC, 344 F.R.D. 175, 182 (W.D. Tenn. 2023), *modified on reconsideration*, No. 2:20-CV-02576 (JPM/TMP), 2023 WL 5662596 (W.D. Tenn. Aug. 31, 2023). Thus, there were repairs left to do, and costs to be paid, so plaintiffs had an injury of overpayment. That is not true here.

2.      *Plotts Received an Effective Recall Repair*

Here, Plotts drives directly into a major roadblock—AHM's recall repair was effective. That is, without Manzari's opinion that the recall repair was ineffective, Plotts has insufficient evidence that the recall repair did not fix the defect. And because the recall repair was effective, it gives him the relief he seeks thus depriving him of an injury-in-fact.

While the Eighth Circuit has not decided whether an effective recall repair obviates damages for overpayment at the time of sale, it has adopted the defect manifestation rule. Under this rule, "plaintiffs claiming economic injury do not have Article III standing in product defect cases unless they show a manifest defect." *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 988 (8th Cir. 2021). If a consumer's product "has not exhibited the alleged defect, they have necessarily received the benefit of their bargain" because the product "performs just as it was intended, and thus there is no

injury." *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 504–05 (8th Cir. 2009). So, the liability-triggering event is when the defect manifests.

By logical extension, if a defect manifests, but has been effectively repaired, and a plaintiff seeks only overpayment at the time of sale, then the plaintiff does not have an Article III injury. Through the repair, plaintiff would have received her benefit of the bargain because her product now performs as intended. So, if the plaintiff does not allege any other injuries (ex: loss of use while the defect manifested, out-of-pocket cost of repair, etc.), then the plaintiff has no Article III injury.[8]

Support for this conclusion is found in other courts which have concluded that an effective recall repair may negate a plaintiff's Article III injury. In *Tarsio*, the plaintiff, like Plotts, alleged that he overpaid for his car because the car had a diminished value due to a defect. *Tarsio v. FCA US LLC*, No. 22-CV-9993 (NSR), 2024 WL 1514211, at *4 (S.D.N.Y. Apr. 8, 2024). The court concluded that the plaintiff lacked Article III standing because through an effective NHTSA-approved recall repair, the plaintiff "ha[d] a perfectly

---

[8] For this reason, the Court rejects Plotts's assertion that post-remedial measures are irrelevant. And because the Eighth Circuit follows the defect manifestation rule, the Court concludes Plotts's reliance on *Nguyen v. Nissan North America, Inc.*, is of limited utility. There the court permitted a cost of repair damages model for plaintiff's claims even though plaintiff received an effective repair. *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 821–22 (9th Cir. 2019). But *Nguyen* did not apply the defect manifestation doctrine; it accepted plaintiff's theory "that the allegedly defective clutch [was] itself the injury, regardless of whether the faulty clutch caused performance issues." *Id.* at 822. That is not the law in the Eighth Circuit, so *Nguyen* is of limited persuasion.

adequate remedy available to him, and that defeats his price-premium theory of injury." *Id.* at *5 (citation omitted). As one court put it, "[a]s a matter of common sense, however, the economic loss injury based on the vehicle's decreased value no longer exists if Defendant has, through the recall, offered to remove the complained-of defect free of charge." *Peckerar v. Gen. Motors, LLC*, No. ED CV 18-2153-DMG (SPX), 2020 WL 5289919, at *2 (C.D. Cal. May 27, 2020); *see also Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 377–79 (6th Cir. 2015) (affirming dismissal for lack of standing because, in light of the defendant's recall repair, plaintiff did not allege a concrete injury traceable to the defendant's misconduct).

The record establishes that Plotts falls within the category of plaintiffs who received an effective repair; he has not created a genuine dispute on this issue. After the exclusion of Manzari's opinion, what remains is Plotts's unsubstantiated assertion that, after the repair, the Pilot had "static on the radio while driving" but "it was not the loud popping" he had heard previously. (Plotts Dep. at 123.) Plotts testified that he only heard this static once since he received AHM's recall repair. (*Id.* at 124.) Without Manzari's opinion, Plotts has no evidence that this one-time static was from the defect rather than something else. Plotts's unsupported, self-serving testimony does not create a genuine issue of material fact. *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) ("In order to establish the existence of a genuine issue of material fact, a plaintiff may not

15

merely point to unsupported self-serving allegations." (citation modified)); *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790–91 (8th Cir. 2009) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence . . . ." (citation omitted)).

Plotts claims that, regardless of the recall repair, he suffered an injury because he would not have bought the Pilot if he knew of the defect, so he is entitled to monetary damages for what he overpaid (measured by cost of repair). But, as stated above, Plotts's proposed benefit-of-the-bargain recovery collapses in light of an effective recall repair.[9]

---

[9] *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prods. Liab. Litig.*, 915 F. Supp. 2d 1151, 1159 (C.D. Cal. 2013) (granting summary judgment for Toyota because, after Toyota's effective recall, plaintiff "received precisely what he bargained for," so he had no benefit-of-the-bargain damages); *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 226 (S.D.N.Y. 2019) (noting that an effective repair may reduce benefit-of-the-bargain damages to zero); *In re Takata Airbag Prod. Liab. Litig.*, No. 15-MD-02599, 2022 WL 17546365, at *7 (S.D. Fla. Nov. 10, 2022) (stating that plaintiffs who received a free recall, "are now in essentially the same position they would have been in had Defendants sold them vehicles with non-defective airbags, and thus they have no legally recoverable benefit-of-the-bargain damages"); *see also Sugasawara v. Ford Motor Co.*, No. 18-CV-06159-LHK, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (concluding that plaintiffs did not articulate any plausible theory of economic loss because if post-recall cars "perform as they would without the Defect, then it follows that the Vehicles' pre-defect values have likewise been restored").

Through AHM's recall repair, Plotts received precisely what he bargained for—a

defect-free Pilot.[10] His injury that he overpaid has been remedied by the recall repair.[11]

3.      *No Other Injuries*

Because Plotts's claim for overpayment, measured by cost of repair, is remedied

by AHM's recall repair, and because he has no evidence of additional injuries, the case

must be dismissed for lack of jurisdiction.

It is undisputed that Plotts has not identified any out-of-pocket damages caused

by the audio symptoms. (Undisputed Facts ¶ 43.) And Plotts does not allege loss of use,

nor would the record support such an argument. The parties do not dispute that Plotts's

use of the car increased even after the defect manifested. (*Id.* ¶¶ 34, 36 ("Plotts' wife drove

---

[10] In *Rivera v. American Honda Motor Company*, the plaintiff sued AHM for the same defect as Plotts and, like Plotts, received AHM's effective free recall repair. No. 24-CV-12883, 2025 WL 1309536, at *1 (N.D. Ill. May 5, 2025) (noting that plaintiff received AHM's recall repair and "it resolved her audio popping and crackling issues from that point forward"). While the court in that case declined to dismiss plaintiff's claim for lack of standing because the plaintiff alleged an economic injury of overpayment, *Rivera* is non-binding and the court admitted that the standing question was "a close call." *Id.* at *4. The Court is likewise unpersuaded by *Ellis v. Nissan N. Am. Inc.*, No. 4:19-CV-00750-FJG, 2020 WL 3105097, at *3 (W.D. Mo. June 11, 2020) (noting that even if the recall efforts fixed the defect "those efforts would not address any economic damages Plaintiff may have.").

[11] This is especially true considering that Plotts does not appear to dispute that under AHM's recall repair, if he is not satisfied with his recall repair, he can take his car into the dealership for additional free repairs. (*See* Kalwasinski Decl. ¶ 50.) And the Court is cognizant that "remedial commitments of the coordinate branches of the United States government," like an NHTSA-approved recall repair, "bear special gravity." *Winzler*, 681 F.3d at 1211.

the vehicle to work three times per week (before the pandemic) and missed no time at work due to the alleged symptoms."). He does not argue financial or temporal inconvenience during the years he drove with the unrepaired defect. And he has no evidence that the Pilot's resale value is less despite being successfully repaired. Nowhere does Plotts describe any injury that has not been remedied by AHM's free recall repair.

The cases Plotts relies on are distinguishable for this exact reason; they involve claims for damages beyond those remedied by an effective recall repair. *Davis v. BMW of N. Am., LLC*, No. 19-CV-19650, 2022 WL 3646571, at *3 (D.N.J. Aug. 23, 2022) (alleging facts to support claims for diminution in value and reimbursement for out-of-pocket expenses); *Lindstrom v. Polaris Inc.*, No. 23-CV-137 (BLG/SPW), 2024 WL 4275619, at *3 (D. Mont. Sept. 24, 2024) (alleging loss of use and other unreimbursed costs); *Sater v. Chrysler Grp. LLC*, No. ED CV 14-00700 (VAP/DTBx), 2014 WL 11412674, at *5 (C.D. Cal. Oct. 7, 2014) (denying motion to dismiss because plaintiff sought loss-of-use damages and diminished resale value due to negative publicity).[12]

The Court does not conclude that a plaintiff who receives an effective recall repair never has an Article III injury-in-fact. But here, Plotts offers no evidence of injury beyond

---

[12] And even though the court in *Sater* denied the motion to dismiss, it later granted summary judgment for the defendant on the Texas Deceptive Trade Practices Act claim because plaintiffs conceded an effective repair, so the court concluded that they were not entitled to benefit-of-the-bargain damages. *Sater v. Chrysler Grp. LLC*, No. ED CV 14-700-VAP (DTBx), 2016 WL 7377126, at *8–9 (C.D. Cal. Oct. 25, 2016).

what is already remedied by the recall repair. Thus, there is no injury, and the case must be dismissed. The Court therefore grants AHM's motion for summary judgment.

## III.   Class Certification

Because the Court grants AHM's motion for summary judgment, Plotts's motion for class certification is denied as moot.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.   AHM's Motion to Exclude Expert Testimony (ECF No. 156) is GRANTED IN PART and DENIED IN PART as follows:

    a.   GRANTED to the extent it seeks to exclude Manzari's testimony that the recall repair was ineffective;

    b.   DENIED AS MOOT to the extent it seeks to exclude Manzari's other opinions;

2.   AHM's Motion for Summary Judgment (ECF No. 157) is GRANTED; and

3.   Plotts's Motion to Certify Class (ECF No. 144) is DENIED AS MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: March 31, 2026                    BY THE COURT:

                                         s/Nancy E. Brasel
                                         Nancy E. Brasel
                                         United States District Judge